IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM IANNACONE, individually,

    Plaintiff,

vs.                                                                        Civil Action No. 2:24-cv-00245

J.D. ELLISON, individually, and
THE NICHOLAS COUNTY
COMMISSION, a political subdivision of
the State of West Virginia,

    Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, the First Amendment to the United States Constitution, arises out of the defendants' commission of retaliation against the Plaintiff's exercise of his First Amendment rights, as well as his Fourth Amendment rights, on or about May 13, 2022 near Summersville, Nicholas County, West Virginia, within the Southern District of West Virginia, Charleston Division.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1. The Plaintiff, William Iannacone, was at all times relevant hereto, a resident of Duck, Nicholas County, West Virginia.

1

2. Defendant, J.D. Ellison, was at all times relevant hereto a deputy employed by the Nicholas County Sheriff's Department, and was at all times relevant hereto acting under the color of law, having an address of 700 Main Street, Suite 3, Summersville, West Virginia 26651

3. Defendant, Nicholas County Commission (NCC) is and was at all times relevant hereto, a political subdivision of the State of West Virginia, having an address of 700 Main Street, Suite 1, Summersville, West Virginia 26651.

## FACTS

4. On May 13, 2022, Plaintiff was driving Southbound on Route 19 near Summersville, Nicholas County, West Virginia when he noticed a law enforcement officer parked in the median running radar.

5. Upon seeing the officer, Plaintiff began flashing his headlights at oncoming traffic to alert motorists of his presence.

6. Defendant Ellison, who was traveling Northbound on Route 19 at the time, spotted Plaintiff flashing his lights and proceeded to turn around and conduct a traffic stop.

7. Defendant Ellison approached Plaintiff's vehicle and told him that he had pulled him over for flashing his headlights to warn other drivers of the officer running radar.

8. Plaintiff advised Defendant Ellison that he was unaware that flashing his headlights as a warning to other drivers was illegal and that he believed he had been engaging in protected speech.

9. After getting Plaintiff's driver's license and registration, Defendant Ellison returned to his cruiser and proceeded to write Plaintiff citations for special restrictions on lamps

and for an unsigned registration card. Defendant Ellison then returned to Plaintiff's vehicle and gave him the citations.

10.     Plaintiff began to laugh when Defendant Ellison said that the possible penalty for the unsigned registration card was up to six months in jail and that he could arrest him instead of giving him a citation.

11.     Plaintiff's laughing infuriated Defendant Ellison who immediately retaliated by ordering him to get out of the vehicle whereupon he placed him in handcuffs and led him back to the cruiser. Plaintiff said said something to the effect of " brother are you serious?" Defendant responded by saying "I'm not your brother and I'll Never be your brother." Plaintiff was then forced to stand handcuffed in front of Defendant Ellison's cruiser on Route 19 for several minutes before Defendant Ellison finally released him after speaking with an unnamed prosecuting attorney.

12.     Plaintiff's exercise of his First Amendment rights was the sole reason Defendant Ellison unlawfully seized him and held him on the side of the road.

### COUNT ONE - CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. 1983
### FIRST AMENDMENT VIOLATION

13.     Plaintiff incorporates by reference all of the previous paragraphs.

14.     The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. To establish a claim of retaliation for exercising one's First Amendment rights, a plaintiff must show that (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from

continuing to engage in the activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action. Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977).

15. Using his respective authority under color of state law, the Defendant Ellison subjected Plaintiff to the deprivation of his rights under the First Amendment by retaliating against him for exercising those rights. Plaintiff was exercising his First Amendment rights on May 13, 2022 when he warned oncoming motorists of the existence of a law enforcement speed trap. He furthermore additionally exercised free speech when he expressed his belief that he was exercising free speech to Defendant Ellison during the subject seizure, as well as by laughing at Ellison's retaliation against him.

16. Motivated to punish and intimidate the Plaintiff for his exercise of his free speech, the Defendant Ellison engaged in various harmful acts against the Plaintiff in violation of clearly established First Amendment law, resulting in his unlawful seizure.

17. "Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." Fraternal Order of Police Hobart Lodge #121, Inc. v. Hobart, 864 F.2d 551, 553 (7th Cir. 1988); *see also* Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir. 1983); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (*quoted by* Davison at 364).

18. The law is well settled in the Fourth Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been asserted in various factual scenarios. Meyers v. City of Cincinnati, 979 F.2d 1154 (6th Cir.1992) (firemen dismissed); Boger v. Wayne County, 950 F.2d 316 (6th Cir.1991) (county employee in

4

Medical Examiner's Office transferred); Draud, 701 F.2d at 1170 (change in public school teacher's duties); Hildebrand v. Board of Trustees, 662 F.2d 439 (6th Cir.1981) (university professor denied tenure), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (prisoner retaliated against for seeking access to courts).

19. Here, it is indisputable that Plaintiff was engaging in protected speech and was wrongfully seized for doing so. It is also indisputable that Defendant Ellison unconstitutionally restricted Plaintiff's speech, to the extreme point of seizing him based solely upon his being upset at Plaintiff for laughing.

20. Defendant Ellison's unconstitutional acts, motivated by retaliatory animus, directly harmed the Plaintiff by chilling his ability to exercise his First Amendment rights.

21. Had it not been for the retaliatory animus, the Defendant Ellison would never have seized and held in handcuffs by the Plaintiff on May 13, 2022.

22. Defendant Ellison thus violated Plaintiff's clearly established First Amendment rights, as set forth in Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

23. Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover

**COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983**
**VIOLATION OF THE FOURTH AMENDMENT**

24. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

25. On May 13, 2022, Defendant Ellison effected the warrantless seizure of the Plaintiff following a traffic stop based upon Plaintiff flashing his headlights at oncoming vehicles.

26. Defendant Ellison seized the Plaintiff and searched him without a warrant, without probable cause, and without reasonable suspicion to believe that Plaintiff had committed any crime. Rather, the seizure was based merely upon Defendant Ellison's retaliation against Plaintiff's exercise of free speech, as well as his anger at Plaintiff for laughing while being served the citations.

27. Although brief encounters between police and citizens require no objective justification, United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002), it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868 (1968).

28. An individual is "seized" within the meaning of the Fourth Amendment when either he is told that he is not free to leave, or when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989). Here, Plaintiff was clearly seized inasmuch as Defendant Ellison not only told Plaintiff that he was detained, but he also handcuffed him and held him at the front of his police cruiser in an unreasonable manner and for an unreasonable period of time.

29. To be lawful, a Terry stop "must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448

U.S. 438, 440, 100 S. Ct. 2752 (1980).  The level of suspicion must be a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009).  As such, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S. Ct. 1868.

30. There was no legal basis for the seizure of the Plaintiff on or about May 13, 2022, as described above.  No objectively reasonable police officer would have reason to believe they have authority to conduct a seizure under the circumstances that existed here. The defendants' actions as alleged herein were done under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for the Plaintiff's First Amendment rights. Moreover, there existed no information indicating that Plaintiff was armed or dangerous, or that he was a safety threat to any individual, including Defendant Ellison.

31. Defendant Ellison seized Plaintiff solely in retaliation for the Plaintiff's exercise of free speech. Plaintiff violated no criminal or traffic law that would have been apparent to an objectively reasonable police officer. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff suffered harm, including attorney fees and expenses, for which he is entitled to recover.

**COUNT THREE- MONELL CLAIM AGAINST THE NICHOLAS COUNTY COMMISSION**

32. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

33. The Nicholas County Commission, which is the political subdivision under which the Nicholas County Sheriff's Department operates, is constitutionally charged and responsible for the training and supervision of employees of the Department. The Commission is also constitutionally charged and responsible for the promulgation of policies for the Sheriff's Department.

34. The actions of Defendant Ellison, an employee of the Nicholas County Sheriff's Department, of engaging in deterring lawful First Amendment protected speech, and in the unlawful seizure of Plaintiff on May 13, 2022 is reflective of the failure of the Sheriff Department's policies, training, and practices, which even after May 13, 2022 were not altered or rectified. Upon information and belief, said constitutionally deficient policies remain in place.

35. On May 13, 2022, the Nicholas County Sheriff's Department maintained a policy and practice of seizing motorists in the absence of reasonable suspicion, and in retaliation for engaging in the protected free speech of warning other motorists of law enforcement speed traps along the roadway.

36. The NCC knew or should have known that it had insufficiently trained its officers in basic constitutional law, as well as basic state criminal statutory law; an understanding of which is essential to their role as public servants, and greater purpose of the NCC as a whole.

37. Upon information and belief, the Nicholas County Sheriff's Department continues to have a policy and practice in place of unlawfully seizing motorists who exercise free speech, such as Plaintiff did on May 13, 2022.

38. As a direct and proximate result of the said policy, custom and practice, the Plaintiff was damaged as described herein, for which he is entitled to recover.

**PRAYER FOR RELIEF**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1. Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for all compensatory damages to be proven at trial.

2. Punitive damages against the individual Defendants in an amount to be determined at trial; and

3. Reasonable attorney fees and costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        WILLIAM IANNACONE
        By Counsel

/s John H. Bryan_____
John H. Bryan (WV Bar No. 10259)
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com