## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

**WILLIAM IANNACONE,**
**individually,**

        **Plaintiff,**

**v.**                                  **CIVIL ACTION NO.: 2:24-cv-00245**
                                                  **HONORABLE THOMAS E. JOHNSTON**

**J.D. ELLISON, individually, and**
**THE NICHOLAS COUNTY**
**COMMISSION, a political**
**Subdivision of the State of West**
**Virginia,**
              **Defendants.**

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**NOW COME** the Defendants, Deputy J.D. Ellison and the Nicholas County Commission, by counsel, Wendy E. Greve, Drannon L. Adkins and the law firm of Pullin Fowler, Flanagan, Brown & Poe, PLLC, pursuant to Rule 12 of the Federal Rules of Civil Procedure and 7.1(a) of the Local Rules of Civil Procedure, and in support of their contemporaneously filed *Motion to Dismiss*, state as follows:

### I.    STATEMENT OF RELEVANT PROCEDURAL POSTURE AND FACTS[1]

This matter concerns a traffic stop that occurred on or about May 13, 2022. ECF No. 1. Plaintiff claims that while he was driving near Summersville, he noticed a law enforcement officer conducting speeding enforcement. Id. at ¶ 4. Plaintiff flashed his headlights to warn other motorists of the officer's presence. Id. at ¶ 5. Apparently, one of the motorists was Deputy Ellison, who turned around and initiated a traffic stop on Plaintiff. Id. at ¶ 6.

---

[1] Although the Defendants dispute many of Plaintiff's factual assertions, for purposes of this motion only, the Defendants "accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

After providing his license and registration, Plaintiff was issued citations for restrictions on lamps and for having an unsigned registration card. Id. at ¶ 9. During the interaction, Plaintiff claims that he laughed when told the possible penalty for the unsigned registration card, so Deputy Ellison ordered him out of the car, temporarily placed him in handcuffs, and searched his person. Id. at ¶¶ 10-11, 19, 26.  Plaintiff claims this was "retaliation" for his First Amendment expressive conduct. Id. at ¶¶ 11, 19, 31. Plaintiff was not arrested but allowed to leave the scene. Id. at ¶ 11.

Thereafter, Plaintiff filed the instant matter. ECF No. 1. Plaintiff brings a host of theories, including two First Amendment retaliatory arrest claims; two Fourth Amendment claims (false arrest and unlawful search); and a municipal liability claim against the Nicholas County Commission.

## II.    STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555).

A plaintiffs' complaint must contain sufficient facts to show subject matter jurisdiction as well as an entitlement to relief. Fed. R. Civ. P. 12(b)(1) and (6); Twombly, 550 U.S. at 555. "[A] complaint must contain sufficient factual matter, excepted as true to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. However, statements of bare legal conclusions "are

not entitled to the assumption of truth" and are insufficient to state a claim. Id. at 679. Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (citation omitted).

### III.   ARGUMENT

**A.     Plaintiff's Claims Against Deputy Ellison Fail as a Matter of Law Because He is Entitled to Qualified Immunity**

Plaintiff purports to bring claims under the First Amendment for a retaliatory arrest and the Fourth Amendment for an unreasonable seizure during the waning moments of the traffic stop. ECF No. 1, at p. 1-7. However, the facts alleged do not establish a violation of any such Amendments, and even if the Court finds that they do, it was not clearly established that such conduct would constitute a violation. Therefore, Deputy Ellison is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations and quotations omitted). The protection applies regardless of whether the government official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact. Id.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Thus, "[a] policeman's lot is not so unhappy that he must choose between being

charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Pierson v. Ray, 386 U.S. 547, 555 (1967). Qualified immunity protects law enforcement officers from "bad guesses in gray areas," and it ensures that they may be held personally liable only "for transgressing bright lines." Maciarello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Qualified immunity analysis involves two inquiries: (1) whether the Plaintiff has established the violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201-202 (2001); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). These prongs need not be analyzed in seriatim but may be addressed in "the order that will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at 242.

   1.   First Amendment Claims

Plaintiff appears to present two separate First Amendment claims, with one being premised upon the decision to initiate a traffic stop (ECF No. 1, at ¶¶ 4-8, 15), and the second premised upon Plaintiff laughing after being told of the potential punishment for a separate driving charge (ECF No. 1, at ¶¶ 9-11, 15, 19). Both of Plaintiff's First Amendment Retaliatory Seizure claims fail.

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). To prove a First Amendment retaliation claim, a plaintiff must show that (1) "that [plaintiff's] speech was protected"; (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "a casual relationship exists between [plaintiff's] speech and the defendant's retaliatory action." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (quoting

4

Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)); Buxton v. Kurtinitis, 862

F.3d 423, 427 (4th Cir. 2017) (quotation marks omitted). However, in the context of retaliatory

arrests, the Supreme Court has held that regardless of whether a plaintiff's speech that is alleged

to have motivated an arrest was protected by the First Amendment, a claim for retaliatory arrest

(or detention) cannot succeed where there is probable cause for an arrest (or reasonable suspicion

for a stop). Nieves, 587 U.S. at 400-402.[2] To succeed on such claim, the plaintiff has the burden to

plead and prove the absence of probable cause or reasonable suspicion. Id. If the plaintiff

establishes there was no probable cause/reasonable suspicion, and that his speech was protected,

he must then show that his speech was a substantial or motivating factor behind the arrest or stop.

Id.

     a. *Traffic Stop*

As to the traffic stop for flashing his headlights, it is debatable and thus not clearly

established as to whether flashing one's headlights to warn other motorists is entitled to First

Amendment protection. As noted in Obriecht v. Splinter, 2019 WL 1779226, at *6 (W.D.Wis.

2019), "the law is far from settled about whether drivers have a First Amendment right to flash

their headlights to convey a warning to oncoming vehicles" because "[n]either the Supreme Court

nor any federal court of appeals has addressed the issue." Not much has changed in the past five

years as the Defendants have been unable to find any controlling decisional law from the U.S.

---

2 It follows that if lack of probable cause is an element of a retaliatory arrest claim, lack of reasonable suspicion is an element of a claim based on a retaliatory traffic stop. See Lopez v. City of Glendora, 811 F.App'x 1016, 1019, fn. 7 (9th Cir. 2020) (unpublished) (assuming without deciding that in a non-arrest context a plaintiff must show an absence of reasonable suspicion to prevail on a First Amendment retaliation claim); Waters v. Madson, 921 F.3d 725, 742 (8th Cir. 2019) (noting that "a plaintiff must show that the defendant officers lacked reasonable suspicion or arguable reasonable suspicion" in a First Amendment retaliatory stop claim); Allen v. Cisneros, 815 F.3d 239, 244-245 (5th Cir. 2016) (no First Amendment retaliation claim where officer had reasonable suspicion for plaintiff's detention) (citation and quotations omitted); *see also* George v. Rehiel, 738 F.3d 562, 586 (3d Cir. 2013) ("Moreover, because we have found that the individual Federal Officials' search and questioning of George during the screening did not violate George's Fourth Amendment rights, we are hard-pressed to find that it could result in a First Amendment retaliation claim on this record.").

Supreme Court, the Fourth Circuit, or the West Virginia Supreme Court finding that flashing one's headlights amounts to First Amendment speech.

However, even assuming the First Amendment affords protections for flashing one's headlights, Plaintiff does not plead facts establishing that Deputy Ellison lacked reasonable suspicion to effectuate a traffic stop. ECF No. 1, at ¶¶ 5-9. Deputy Ellison stopped Plaintiff's vehicle for (and ultimately cited him for) violating the restriction on lamps, West Virginia Code § 17C-15-26, because Plaintiff was flashing his headlights. ECF No. 1, at ¶¶ 5-9. West Virginia Code § 17C-15-26(c) provides that flashing lights may not be utilized by except for turn signals or to warn that the vehicle is disabled or having an emergency. Because Plaintiff was flashing his lights when his vehicle was not disabled or having an emergency, such conduct arguably violated West Virginia Code § 17C-15-26. Even if Deputy Ellison was mistaken, a reasonable officer could have mistakenly believed that flashing headlights fell within the prohibition set forth in the statute.

Moreover, even if the Court determines that West Virginia Code § 17C-15-26 does not or should not apply to the flashing of headlights, it is not clearly established that effectuating a traffic stop for such actions is unlawful or that it violates the driver's First Amendment rights. Thus, Deputy Ellison is entitled to qualified immunity on Plaintiff's first First Amendment claim.

b.  *Detention During Traffic Stop*

Plaintiff's second First Amendment claim fares no better. He asserts that after he was advised of the possible penalty for having an unsigned registration card, he laughed, and was thereafter detained. ECF No. 1, at ¶¶ 9-11.

Here again, however, Plaintiff fails to allege that this detention (or arrest) was not supported by probable cause. Id. In West Virginia, motor vehicle registration cards must be carried in the vehicle or be in the possession of the person operating the vehicle and must be produced

6

upon demand by a law enforcement officer. West Virginia Code § 17A-3-13. At the time in question, West Virginia drivers were required to have signed registration cards. *See*, West Virginia Code § 17A-3-13 (1951). However, in March 2022, the West Virginia Legislature amended West Virginia Code § 17A-3-13 to remove the requirement for signed registration cards to comply with the digitization of the DMV process. *See*, West Virginia H.B. 4345. However, that code revision was not effective until June 5, 2022. Thus, until June 5, 2022, it was unlawful for West Virginia drivers to have an unsigned registration card. Because Plaintiff's registration card was unsigned, there was probable cause to detain him.

Moreover, "police may order persons out of an automobile during a stop for a traffic violation." Michigan v. Long, 463 U.S. 1032, 1047 (1983) (*citing* Pennsylvania v. Mimms, 434 U.S. 106 (1977)). So too is placing Plaintiff in handcuffs. *See*, United States v. Donaldson-Pinilla, 292 Fed.Appx. 217, 218-220 (4th Cir. 2008) (officer may temporarily handcuff a suspect during a traffic stop for the officer's safety as long as the restriction lasts only long enough to verify suspicions of illegal activity, and without elevating a *Terry* stop into an arrest).

Further, even if placing the Plaintiff in handcuffs constitutes an arrest, the Supreme Court has long held that an arrest for a minor, non-jailable offense does not violate the Fourth Amendment. *See* Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Nor would such an arrest violate the First Amendment as there was probable cause to do so. Nieves, 587 U.S. at 400-402.

Finally there is no Supreme Court decision holding that an officer acts unlawfully if he decides to arrest an individual upon probable cause that a statutory violation has occurred, but neglects to consider whether that such conduct might be protected by the First Amendment. Indeed, case law leans the other way, providing that an individual cannot immunize otherwise

7

unlawful conduct by also purporting to engage in "communicative" conduct arguably protected by the First Amendment. *See, e.g.,* Branzburg v. Hayes, 408 U.S. 665, 682 (1972) ("It is clear that the First Amendment does not invalidate every incidental burdening of [speech] that may result from the enforcement of civil or criminal statutes of general applicability.").

Accordingly, Deputy Ellison is entitled to qualified immunity on Plaintiff's second First Amendment claim.

### 2. Fourth Amendment

In Count Two, Plaintiff also appears to assert two Fourth Amendment theories: (1) a False Arrest claim and (2) an unlawful search claim. ECF No. 1, at p. 5-6. Deputy Mullins is entitled to qualified immunity on both theories because (1) he had probable cause to seize Plaintiff for a traffic violation, and (2) law enforcement officers can conduct a pat-down

#### a. *False Arrest Claim*

False arrest claims are analyzed under the Fourth Amendment as they "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment." *See,* Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001). To state a claim for false arrest under § 1983, a plaintiff must demonstrate that he was arrested or seized without probable cause. Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974) ("[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause."); Brown v. Gilmore, 278 F.3d 362, 367–68 (4th Cir. 2002) (analyzing false arrest claim for whether seizure was unreasonable). Therefore, the question of whether Deputy Ellison violated Plaintiff's constitutional rights depends on whether he had probable cause to seize him. Brown, 278 F.3d at 368.

"Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." United States v.

8

Jones, 952 F.3d 153, 158 (4th Cir. 2020) (quotation omitted). Courts consider all of the circumstances known to the officer at the time of the arrest to determine whether there was probable cause. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996). The arresting officer's belief need not be correct or even more likely true than false, so long as it is reasonable. Texas v. Brown, 460 U.S. 730, 742 (1983).

Plaintiff contends that Deputy Ellison seized and searched him without a warrant, without probable cause, and without reasonable suspicion to believe that he had committed a crime. ECF No. 1, at ¶¶ 10-11, 26, 30.

As noted above, during the traffic stop it was determined that the vehicle's registration card was unsigned. ECF No. 1, at ¶ 9. At that time, West Virginia law required registration cards to be signed. West Virginia Code § 17A-3-13 (1951). That requirement was in effect until June 5, 2022. West Virginia H.B. 4345. However, that code revision was not effective until June 5, 2022. West Virginia Code § 17A-3-1(a) classifies violations of Article 3 as misdemeanors and imposes differing penalties dependent upon whether it is a first, or second or subsequent offense.[3] Because Plaintiff's registration card was unsigned, it constituted a misdemeanor and Deputy Ellison had probable cause to further detain and seize him.

Likewise, it was constitutionally permissible to order Plaintiff out of the vehicle during the traffic stop. Long, 463 U.S. at 1047 (citation omitted). And it was permissible under the Constitution to place Plaintiff in handcuffs. Donaldson-Pinilla, 292 Fed.Appx. at 218-220. Finally, even if Deputy Ellison had continued through with the arrest procedure, such conduct does not run afoul of the Fourth Amendment, even for minor or non-jailable offenses. Atwater, 532 U.S. at 354. In Atwater, the plaintiff committed a seat belt violation punishable only by a fine, but the Supreme

---

3 West Virginia Code § 17A-3-1(a) notes that unless another penalty is specifically proscribed, violations of the article are misdemeanors. West Virginia Code §17A-3-13 did not proscribe any other penalty.

Court held that the Fourth Amendment does not forbid a warrantless arrest for such a minor violation. Id.; *see also*, Meeks v. McClung, 2023 WL 8791686, at *10 (S.D.W.Va. 2023) ("Although one could reasonably question whether arresting Plaintiff Meeks for these relatively minor traffic offenses was an efficient use of City resources, the Supreme Court has been clear about the Fourth Amendment implications: an arrest for a minor, non-jailable traffic offense punishable only by fine is not unreasonable under the Fourth Amendment, so long as the arrest is supported by probable cause." (citing Atwater, 532 U.S. at 354).

Thus, because Plaintiff has not properly alleged that his temporary detention lacked probable cause (nor can he as Plaintiff has not alleged that his registration card was signed), there was no Fourth Amendment violation.

Accordingly, because probable cause existed, Deputy Ellison is entitled to qualified immunity on the false arrest claim as there is no constitutional violation and even if there was, Plaintiff's seizure was reasonable as there was probable cause to support the arrest.

   b.  *Unlawful Search Claim*

Because there was probable cause to seize or arrest Plaintiff for failing to have his registration card, Deputy Ellison could conduct a brief, limited search of his person without running afoul of the Fourth Amendment.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may—incident to that arrest and without a warrant—search "the arrestee's person and the area 'within his immediate control.' " Chimel v. California, 395 U.S. 752, 763 (1969). "Such searches have long been considered valid because of the need 'to remove any

10

weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." New York v. Belton, 453 U.S. 454, 457 (1981) (quoting Chimel, 395 U.S. at 763).

Moreover, "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." Michigan v. DeFillippo, 443 U.S. 31, 35 (1979). This is a "bright line" rule of constitutional law. United States v. Porter, 738 F.2d 622, 627 (4th Cir.1984).

As noted above, there was probable cause to seize (or arrest) Plaintiff due to his having failed to sign his vehicle registration card, which was at the time required by West Virginia law. West Virginia Code § 17A-3-13 (1951); West Virginia Code § 17A-3-1. Once Plaintiff was placed in handcuffs, it was constitutionally permissible to conduct a limited search of his person. Chimel, 395 U.S. at 763. It matters not whether Deputy Ellison believed or had reason to suspect that Plaintiff was armed. DeFillippo, 443 U.S. at 35.

Accordingly, because probable cause existed to seize Plaintiff, Deputy Ellison was permitted under the Fourth Amendment to conduct a limited search incident to arrest. Thus, Deputy Ellison is entitled to qualified immunity on the unlawful claim as there is no constitutional violation.

**B.    Plaintiff's Municipal Liability Claim Fails as a Matter of Law**

Plaintiff fails to allege that his federal constitutional rights were violated pursuant to an unconstitutional policy or custom fairly attributable to the Nicholas County Commission. See ECF No. 1.

1.    Plaintiff Fails to Properly Allege a Basis for a Municipal Liability Claim

11

The Supreme Court has held that "Congress […] intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

> A policy or custom for which a municipality may be held liable can arise in four ways:
>
> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (*quoting*, Carter v. Morris, 164 F.3d 215, 217 (4th Cir.1999)). Thus, at the pleading stage, "[s]ection 1983 plaintiffs seeking to impose liability on a [local government] must … adequately plead and prove the existence of an official policy or custom that is fairly attributable to the [local governmental entity] that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994) (*citing* Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)).

Here however, Plaintiff does not plausibly allege any basis for a municipal liability claim. Plaintiff does not allege any facts supporting a claim that there is an official or express policy;[4] nor does it allege any facts supporting a claim that there is an unofficial policy enacted or

---

4 With regard to the existence of an express policy, a "policy" sufficient to impose liability on a local government consists of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local government's] officers." Monell, 436 U.S. at 690. There are no allegations of an official policy. ECF No. 1, at ¶¶ 33-37.

12

acquiesced in by a person with policymaking authority.[5] ECF No. 1, at ¶¶ 33-37.

Further, Plaintiff has not properly alleged a failure to train theory. As noted by this Court,

> For a municipality to be liable under § 1983 for failing to properly train police, the failure to train must amount[ ] to deliberate indifference to the rights of persons with whom the police come into contact.. If the municipality's failure to train reflects such a deliberate or consciously indifferent policy, then the municipality's failure can be considered the moving force [behind] the constitutional violation. Failure to train can only form a basis for liability if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations. Furthermore, the injury itself must be closely related to the failure to train, meaning it must cause the incident. Additionally, as a Monell claim is not compatible with the theory of respondeat superior, a single incident is almost never enough to warrant municipal liability.

Deavers v. Martin, 629 F.Supp.3d 389, 407-408 (S.D.W.Va. 2022) (citations and quotations marks omitted). Thus, "when alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training, to establish liability under § 1983." Roberts v. City of Hagerstown, Maryland, 2024 WL 640029, at *6 (D. Md. 2024) (citations omitted); *see also,* Quigley v. City of Huntington WV, 2017 WL 9533233, at *9 (S.D.W.Va. 2017), *report and recommendation adopted sub nom.*, 2017 WL 4998647 (S.D.W.Va. 2017).

Here however, Plaintiff's Complaint alleges no facts concerning the nature of the training received, or what training Plaintiff claims was not provided to Deputy Ellison. ECF No. 1, at ¶¶ 33-37. Nor does it allege facts concerning the training course selected by the Nicholas County Commission. Id. Rather, it claims that Deputy Ellison's conduct "is reflective of the failure of the Sheriff Department's policies, training, and practices…." Id. at ¶ 34. The Complaint contains no

---

5 "'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir.1987). Plaintiff's Complaint does not contain any factual allegations concerning who, if anyone, was the final policymaker with respect to handling of traffic violations. ECF No. 1, at ¶¶ 33-37.

facts concerning a pattern of similar conduct. Id. at ¶¶ 33-37.

Finally, there are no allegations which would support a claim of a "custom." A custom is a "relevant practice [that] is so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997). The Complaint does not contain any assertions of past instances of similar conduct. ECF No. 1, at ¶¶ 33-37. As stated by the Fourth Circuit, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Lytle, 326 F.3d at 473; see also, Deavers, 629 F.Supp.3d at 407. "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." Lytle, 326 F.3d at 473. The Lytle Court held that failure to establish numerous incidents of similar conduct prior to the conduct at issue is fatal to an unconstitutional custom claim. Id. Boiled to its essence, Plaintiff's municipal liability claim is in reality an improper claim for *respondeat superior* liability.

Because Plaintiff has failed to plausibly enumerate the existence of an unconstitutional policy or custom resulting in his alleged constitutional deprivations, and because the NCC cannot be held vicariously liable for the acts of its employees, Plaintiff has failed to state a claim against the NCC.

2. Plaintiff's Municipal Liability Claim Fails Because He did not Suffer a Constitutional Violation

For a § 1983 claim to be actionable against a municipality, there must be an underlying constitutional deprivation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that a municipality may be held liable under 42 U.S.C. § 1983 only for an actual constitutional violation committed by individual officials). Thus, "a municipality may be held liable under 42 U.S.C. § 1983 only for an actual constitutional violation committed by [an] individual official." S.P. v. City of Takoma Park, 134 F.3d 260, 272 (4th Cir. 1998) (*citing* Heller, 475 U.S. at 799). Without an

"underlying constitutional violation by any individual, there can be no municipal liability. <u>Grayson v. Peed</u>, 195 F.3d 692. 697 (4th Cir. 1999) (*citing* <u>Heller</u>, 475 U.S. at 799). In other words, "municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." <u>Evans v. Chalmers</u>, 703 F.3d 636, 654 (4th Cir. 2012) (citations omitted); <u>Ryu v. Whitten</u>, 684 Fed.Appx 308, 311 (4th Cir. 2017) ("[B]ecause there is no Fourth Amendment violation, both Ryu's Fourth Amendment claim against Whitten in his individual capacity and his *Monell* claim against Warren County fail"); <u>Wilson v. Flynn</u>, 429 F.3d 465, 469 n.* (4th Cir. 2005) ("The lack of a constitutional violation also disposes of Wilson's claim against the Town of Ayden").

As noted above, Plaintiff's §1983 claims against Deputy Ellison fail because there was not a violation of a clearly established constitutional right. As Plaintiff cannot establish that he suffered a constitutional deprivation under the First or Fourth Amendments, there can be no municipal liability. Accordingly, Plaintiff's municipal claim fails as a matter of law and should be dismissed.

## IV.   CONCLUSION

**WHEREFORE,** Plaintiff's Complaint fails to state a claim for which relief may be granted against the Defendants. Thus, for the foregoing reasons, these Defendants respectfully request that this Honorable Court dismiss the claims against them, with prejudice.

> **DEPUTY   J.D.   ELLISON   and   THE NICHOLAS COUNTY COMMISSION,**
> By Counsel,
>
> */s/ Drannon L. Adkins*
> _____
> Wendy E. Greve, WV State Bar No. 6599
> Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:    (304) 344-0100
Facsimile:    (304) 342-1545

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**WILLIAM IANNACONE,
individually,**

        **Plaintiff,**

**v.**
                                    **CIVIL ACTION NO. 2:24-cv-00245
HONORABLE THOMAS E. JOHNSTON**

**J.D. ELLISON, individually, and
THE NICHOLAS COUNTY
COMMISSION, a political
Subdivision of the State of West
Virginia,**

        **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify on the **15th** day of **July 2024**, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court via the CM/ECF system which will send notification to the following:

John Bryan
P.O. Box 366
Union, WV 24983
jhbryan@me.com; jhb@johnbryanlaw.com
*Counsel for Plaintiff*

                                         */s/ Drannon L. Adkins*
                                    Wendy E. Greve, WV State Bar No. 6599
                                    Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:    (304) 344-0100
Facsimile:    (304) 342-1545