IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM IANNACONE, individually,

        Plaintiff,

vs.

                                          Civil Action No. 2:24-cv-00245
                                          Hon. Thomas E. Johnston

J.D. ELLISON, individually, and
THE NICHOLAS COUNTY
COMMISSION, a political subdivision of
the State of West Virginia,

        Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS J.D. ELLISON AND
NICHOLAS COUNTY COMMISSION'S MOTION TO DISMISS**

      Now comes the Plaintiff, by and through counsel, John H. Bryan, moving the Court to

deny the said Defendants' motion to dismiss.  In support hereof, the Plaintiff states as follows:

**INTRODUCTION**

      This case arises from an incident which occurred on April 11, 2022 in Nicholas County,

West Virginia.

**FACTS ALLEGED IN THE COMPLAINT**

      On May 13, 2022, Plaintiff was driving Southbound on Route 19 near Summersville,

Nicholas County, West Virginia when he noticed a law enforcement officer parked in the median

running radar. Upon seeing the officer, Plaintiff began flashing his headlights at oncoming traffic

to alert motorists of his presence. Defendant Ellison, who was traveling Northbound on Route 19

1

at the time, spotted Plaintiff flashing his lights and proceeded to turn around and conduct a traffic stop.

Defendant Ellison approached Plaintiff's vehicle and told him that he had pulled him over for flashing his headlights to warn other drivers of the officer running radar. Plaintiff advised Defendant Ellison that he was unaware that flashing his headlights as a warning to other drivers was illegal and that he believed he had been engaging in protected speech.

After getting Plaintiff's driver's license and registration, Defendant Ellison returned to his cruiser and proceeded to write Plaintiff citations for special restrictions on lamps and for an unsigned registration card. Defendant Ellison then returned to Plaintiff's vehicle and gave him the citations. Plaintiff began to laugh when Defendant Ellison said that the possible penalty for the unsigned registration card was up to six months in jail and that he could arrest him instead of giving him a citation.

Plaintiff's laughing infuriated Defendant Ellison who immediately retaliated by ordering him to get out of the vehicle whereupon he placed him in handcuffs and led him back to the cruiser. Plaintiff said said something to the effect of " brother are you serious?" Defendant responded by saying "I'm not your brother and I'll Never be your brother." Plaintiff was then forced to stand handcuffed in front of Defendant Ellison's cruiser on Route 19 for several minutes before Defendant Ellison finally released him after speaking with an unnamed prosecuting attorney.

## ARGUMENT

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." Robertson v. Sea Pines Real Estate Co., 679 F.3d 278, 288 (4th Cir. 2012) (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." Id.

Here, when taken as true, Plaintiff has set forth more than sufficient facts to state claims that are plausible on their face.

### 1.    Defendant Ellison is not entitled to qualified immunity.

Here, Defendant Ellison first argues that he has qualified immunity.  Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g.*, Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." In re Allen, 106 F.3d 582, 594 (4th Cir. 1997) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff...." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).

The analysis of a qualified immunity claim involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. Raub v. Campbell, 785 F. 3rd 876 at 881 (4th Cir. 2015). Here, it is clear that Plaintiff had a Fourth Amendment right to be free from suffering retaliation in response to his exercise of protected free speech. It is also equally clear that such rights were clearly established at the time of Defendants' actions.

Additionally, even "…summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cty., 154 F. 3rd 173 (4th Cir. 1998). As set forth above, there are clear material factual disputes as to whether Defendants' actions violated Plaintiff's clearly established constitutional rights. Therefore, as held in Vathekan, Id. at 180, inasmuch as such disputes exist here, dismissal or summary judgment on the basis of qualified immunity would be improper.

    a.    **First Amendment Claim.**

Defendant Ellison argues that his actions of stopping and detaining Plaintiff did not violate Plaintiff's First Amendment rights. As stated in the Complaint, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. To establish a claim of retaliation for exercising one's First Amendment rights, a plaintiff must show that (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated

the defendant's adverse action. Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977).

Here, using his respective authority under color of state law, Defendant Ellison subjected Plaintiff to the deprivation of his rights under the First Amendment by retaliating against him for exercising those rights. Plaintiff was exercising his First Amendment rights on May 13, 2022 when he warned oncoming motorists of the existence of a law enforcement speed trap. He furthermore additionally exercised free speech when he expressed his belief that he was exercising free speech to Defendant Ellison during the subject seizure, as well as by laughing at Ellison's retaliation against him.

"Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." Fraternal Order of Police Hobart Lodge #121, Inc. v. Hobart, 864 F.2d 551, 553 (7th Cir. 1988); see also Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir. 1983); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (quoted by Davison at 364).

The law is well settled in the Fourth Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been asserted in various factual scenarios. Meyers v. City of Cincinnati, 979 F.2d 1154 (6th Cir.1992) (firemen dismissed); Boger v. Wayne County, 950 F.2d 316 (6th Cir.1991) (county employee in Medical Examiner's Office transferred); Draud, 701 F.2d at 1170 (change in public school teacher's duties); Hildebrand v. Board of Trustees, 662 F.2d 439 (6th Cir.1981) (university professor denied tenure), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982);

Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (prisoner retaliated against for seeking access to courts).

Here, as set forth in the Complaint, Defendant Ellison seized Plaintiff initially in retaliation for flashing his lights as an expression of free speech, and then further seized Plaintiff after the citations were written, based solely upon his being upset at Plaintiff for laughing - also a protected expression of free speech.

Defendant Ellison argues that he was entitled to seize Plaintiff because driving while not having signed one's registration card is technically a crime in West Virginia. In so doing, Defendant Ellison once again seeks to abuse state law in order to punish Plaintiff for the content of his protected speech. Plaintiff alleges in the Complaint that Ellison had already written the citations for special restrictions on lamps and the unsigned registration card and returned to Plaintiff's vehicle. *See* Complaint at ¶ 9. Thus even assuming Defendant Ellison had probable cause to seize Plaintiff for those violations, the seizure ended when Ellison wrote the citations and returned to Plaintiff's vehicle.[1] There was no further basis on which to further extend the stop, or perform a secondary detention.

Had it not been for the retaliatory animus, the Defendant Ellison would never have been further seized and held in handcuffs by Defendant Ellison on May 13, 2022. Ellison did so not with any valid reasonable suspicion or probable cause basis, but solely because Plaintiff laughed at Ellison's statement that he could have arrested Plaintiff, rather than issuing citations. *See*

---

[1] Reviewing the bodycam footage from the incident, Plaintiff wants to clarify that while Defendant Ellison wrote the two citations and returned with them to Plaintiff's window, Ellison refused to physically hand them over to the Plaintiff as they debated the legality of the citations, during which Ellison acknowledged that it was not a violation to warn other drivers by flashing his lights, but that he believed the "special lamps" violation was applicable. Plaintiff maintains that to whatever extent Ellison failed to "give" Plaintiff the citations, he reasonably should have prior to the secondary portion of the stop occurred.

Complaint at ¶ 10. When Plaintiff asked Ellison, "brother are you serious," Ellison responded, "I'm not your brother and I'll never be your brother." Ellison then placed Plaintiff in handcuffs and held him for a period of time in front of his police cruiser on the side of Route 19. *See* Complaint at ¶ 11.

Defendant Ellison thus violated Plaintiff's clearly established First Amendment rights, as set forth in Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

Based upon the foregoing, Defendant Ellison is not entitled to dismissal under Rule 12. Moreover, his arguments are more properly addressed at the summary judgment stage.


**b.    Fourth Amendment Claim.**

On May 13, 2022, Defendant Ellison effected the warrantless seizure of the Plaintiff following a traffic stop based upon Plaintiff flashing his headlights at oncoming vehicles. Defendant Ellison seized the Plaintiff and searched him without a warrant, without probable cause, and without reasonable suspicion to believe that Plaintiff had committed any crime. Rather, the seizure was based merely upon Defendant Ellison's retaliation against Plaintiff's exercise of free speech, as well as his anger at Plaintiff for laughing while being served the citations.

Although brief encounters between police and citizens require no objective justification, United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002), it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868 (1968). An individual is "seized" within the meaning of the Fourth

Amendment when either he is told that he is not free to leave, or when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989). Here, Plaintiff was clearly seized inasmuch as Defendant Ellison not only told Plaintiff that he was detained, but he also handcuffed him and held him at the front of his police cruiser in an unreasonable manner and for an unreasonable period of time.

To be lawful, a Terry stop "must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. 438, 440, 100 S. Ct. 2752 (1980). The level of suspicion must be a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009). As such, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S. Ct. 1868.

There was no legal basis for the seizure of the Plaintiff on or about May 13,2022, as described above. No objectively reasonable police officer would have reason to believe they have authority to conduct a seizure under the circumstances that existed here. Defendant Ellison seized Plaintiff solely in retaliation for the Plaintiff's exercise of free speech in flashing his headlights. Plaintiff violated no criminal or traffic law that would have been apparent to an objectively reasonable police officer, as indicated by the fact that there was no applicable criminal violation with which to charge Plaintiff for the activity for which he was stopped - flashing his lights to warn oncoming motorists of a speed trap.

The citation for "special lamps" was wholly inapplicable and was subsequently dismissed. Additionally, the unsigned registration card cannot have formed the basis of the initial detention where Defendant Ellison had no way of knowing that the registration card was unsigned. He only learned that fact after stopping Plaintiff for the non-existent crime of flashing his lights to warn oncoming motorists.

Lastly, as argued above in regards to the First Amendment claim, Ellison had already written Plaintiff citations for the violations he sought to charge and returned with them to Plaintiff's vehicle. He had no reason to further detain Plaintiff.

As the Fourth Circuit recently noted in Sharpe v. Winterville Police Dep't, 59 F.4th 674 (4th Cir. 2023), every reasonable officer knows by clearly established law that the standard for assessing intrusions on personal liberty during traffic stops is "reasonableness." citing Maryland v. Wilson, 519 U.S. 408, 411, 117 S.Ct. 882 ("[T]he touchstone of [the] analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security" (quoting Pennsylvania v. Mimms. 434 U.S. 106 108-09, 98 S.Ct. 330)).

If a traffic stop is extended in time beyond the period that the officers are completing tasks related to the traffic infractions, the officers must either obtain consent from the individuals detained or identify reasonable suspicion of criminal activity to support the extension of the stop. United States v. Hill, 852 F.3d 377, 382 (4th Cir. 2017) citing United States v. Williams, 808 F.3d 238, 245-46 (4th Cir. 2015); United States v. Rodriguez, 575 U.S. 348, 135 S. Ct. 1609, 1614 (2015) (The "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are - or reasonably should have been - completed.").

While an officer may engage in some unrelated conversation or investigation during a routine traffic stop, such unrelated activity is permitted under the Fourth Amendment only as long as that activity does not prolong the roadside detention for the traffic infraction. Hill, 852 F.3d 377, 382 (4th Cir. 2017). The Fourth Circuit has warned, in accordance with Supreme Court precedent, that extending a stop by even a *de minimis* length of time violates the Fourth Amendment. Id. at 381.

Here, even after Defendant Ellison did everything necessary to effectuate the traffic stop, ending in writing citations and returning with them to Plaintiff's vehicle, he continued to carry on conversation with the Plaintiff that was unnecessary to the stop and retaliatory. Had it not been for the retaliatory animus, the Plaintiff would never have been further seized and held in handcuffs by Defendant Ellison on May 13, 2022. Ellison did so not with any valid reasonable suspicion or probable cause basis, but solely because Plaintiff laughed at Ellison's statement that he could have arrested Plaintiff, rather than issuing citations. *See* Complaint at ¶ 10. When Plaintiff asked Ellison, "brother are you serious," Ellison responded, "I'm not your brother and I'll never be your brother." Ellison then placed Plaintiff in handcuffs and held him for a period of time in front of his police cruiser on the side of Route 19. *See* Complaint at ¶ 11. This all took place after the citations had been written and the traffic stop was, or reasonably should have been completed. Rodriguez, 135 S. Ct. at 1614.

Lastly, while police officers certainly have latitude to remove subjects from vehicles during traffic stops for officer safety reasons, even assuming that Ellison was justified in further prolonging the traffic stop in order to complete the tasks associated with the traffic stop, he had no automatic entitlement to frisk the Plaintiff and place him in handcuffs, just because Plaintiff

laughed at him. In order to conduct a frisk, an officer must have both conducted a lawful traffic stop, and secondly during the stop, the officer must reasonably suspect that the individual is "armed" and "dangerous." United States v. Robinson, 856 F.3d 694, 700 (4th Cir. 2017).

As alleged in the Complaint, Defendant Ellison had no information indicating that Plaintiff was either armed or dangerous. See Complaint at ¶ 30. Thus Ellison did not have sufficient justification to force Plaintiff through the humiliating process of being frisked and held in handcuffs for the purpose of intimidation, punishment, or retaliation for laughing at him.

Based upon the foregoing, Defendant Ellison is not entitled to dismissal under Rule 12. Moreover, his arguments are more properly addressed at the summary judgment stage.


2.    **Monell Claim**

Defendant, Nicholas County Commission, argues that Plaintiff's Complaint fails to set forth sufficient facts to establish a Monell claim.  As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. Id. at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit has explained that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways:
> (1) through an express policy, such as a written ordinance or regulation; (2) through the

decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). The Court has further noted that "[a]lthough prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens v. Baltimore Attorney's Office, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Id.

Liability against municipalities or counties may be based upon a single incident and the requirements of "policy" and "custom" do not necessitate proof of a long-standing practice. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Owen v. City of Independence, Mo., 445 U.S. 622 (1980).  Where plaintiff is able to prove only a single incident of an unconstitutional practice it is necessary either to prove by some independent evidence the existence of the policy or custom that caused the incident, or to show the incident was caused by the action of a policymaker. Ruvalcaba v. City of Los Angeles, 167 F.3d 514 (9th Cir. 1999).

Courts have for the most part analyzed these cases under traditional tort principles. If the plaintiff can show a municipal policy or custom was the proximate cause of the violation he or she may prevail against the municipality. Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996); ; see also Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). The Supreme Court's decision in Monell establishes where an unconstitutional ordinance, regulation or written policy of a municipality causes a violation of the plaintiff's rights there is liability against the city. Lanier v.

City of Woodburn, 618 F.3d 1147 (9th Cir. 2008); Zook v. Brown, 865 F.2d 887 (7th Cir. 1989);

Moyle v. Anderson, 571 F.3d 814 (8th Cir. 2009); Victoria W u. Larpenter, 369 F.3d 475 (5th Cir.

2004).

      Where a municipality adopts a policy or custom which expressly authorizes a

constitutional violation against citizens by police officers, there will be liability under Monell.

See Chew v. Gates, 27 F.3d 1432 (9th Cir. 1994) (Monell liability may exist where a city equips

its officers with K-9s known to bite in unnecessary situations); Donovan v. City of Milwaukee,

17 F.3d 944 (7th Cir. 1994); Jamieson By and Through Jamieson v. Shaw, 772 F.2d 1205 (5th

Cir. 1985). Moreover, Municipal liability can result from a municipality's acquiescence to the

decisions of subordinates. Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 527 (4th Cir. 2000);

see also Jeffes v. Barnes, 208 F.3d 49, 64 (2d Cir. 2000) (explaining that a jury could find that a

sheriff had enough knowledge of potential unconstitutional conduct that he acquiesced in or was

deliberately indifferent toward complaints against his officers); see also Spell v. McDaniel, 824

F.2d 1380, 1390 (4th Cir. 1987) (explaining that a municipality's custom must make a specific

constitutional injury "bound to happen, sooner or later, rather than merely likely to happen in the

long run" to impose municipal liability under Monell).

      A local government is liable under § 1983 when a policy or custom is "the moving force"

behind a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiffs must show that an official policy or custom is attributable to the government and that

the policy proximately caused the deprivation of their rights. Semple v. City of Moundsville, 195

F.3d 708, 712 (4th Cir. 1999) (citation omitted). A "policy" is "a course of action consciously

chosen from among various alternatives." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823

(1985). In addition to official policies, liability can result from "deficient programs of police

training and supervision" and "failure . . . to put a stop to or correct a widespread pattern of

unconstitutional conduct by police officers of which the specific violation is simply an example."

Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a

motion to dismiss, courts must accept as true all of the factual allegations contained in the

complaint and draw all reasonable inferences in favor of [P]laintiff." Farnsworth v. Loved Ones

in Home Care, LLC, No. 2:18-CV- 01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019)

(*citing* E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must

"state a claim to relief that is plausible on its face." Robertson v. Sea Pines Real Estate Co., 679

F.3d 278, 288 (4th Cir. 2012) (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The

plausibility standard is not a probability requirement, but "asks for more than a sheer possibility

that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (*citing* Bell Atl. Corp. v. Twombly,

550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim

that is plausible on its face, it nevertheless need only give the defendant fair notice of what the

claim is and the grounds on which it rests." Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir.

2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." Id.

Here, Plaintiff's Complaint has set forth sufficient facts for a reasonable jury to conclude

that the NCC has mandated or condoned the conduct of Defendant Ellison, in violation of the

Fourth Amendment. Moreover, the Complaint sets forth sufficient facts to establish that the NCC

is constitutionally charged with the responsibility of ensuring proper training and supervision of officers employed by the Nicholas County Sheriff's Department, including training and supervision regarding the conduct of searches and seizures and unlawful retaliatory detention of a person for exercising their First Amendment rights.

Plaintiff alleged that the actions of Defendant Ellison, an employee of the Nicholas County Sheriff's Department, of engaging in deterring lawful First Amendment protected speech, and in the unlawful seizure of Plaintiff on May 13, 2022 is reflective of the failure of the Sheriff Department's policies, training, and practices, which even after May 13, 2022 were not altered or rectified. Upon information and belief, said constitutionally deficient policies remain in place. See Complaint at ¶ 34.

Plaintiff also alleged that on May 13, 2022, the Nicholas County Sheriff's Department maintained a policy and practice of seizing motorists in the absence of reasonable suspicion, and in retaliation for engaging in the protected free speech of warning other motorists of law enforcement speed traps along the roadway. See Complaint at ¶ 35.

Defendant NCC's arguments, which ask the Court to weigh the allegations asserted in the Complaint, are more properly addressed at the summary judgment stage. The claim has been properly asserted. It is likely that the discovery process will provide more information for the Court to assess in a summary judgment ruling.

WHEREFORE, the plaintiffs respectfully request that the defendants' motion to dismiss be denied, and for such other and further relief as the Court deems just and fit.

WILLIAM IANNACONE
By Counsel

/s /John H. Bryan_____
John H. Bryan (WV Bar No. 10259)
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

WILLIAM IANNACONE, individually,

        Plaintiff,

vs.                                                        Civil Action No. 2:24-cv-00245

J.D. ELLISON, individually, and
THE NICHOLAS COUNTY
COMMISSION, a political subdivision of
the State of West Virginia,

        Defendants.


**<u>CERTIFICATE OF SERVICE</u>**

    I, John H. Bryan, do hereby certify that I have delivered a true copy of the

foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS has been

served upon counsel of record by using the CM/ECF System, this the 29th day of June, 2024 and

addressed as follows:

Wendy E. Greve, Esq.
Drannon Adkins, Esq.
PULLIN, FOWLER, FLANAGAN, BROWN & POE,
JamesMark Building
901 Quarrier Street
Charleston, WV 25301
Counsel for Defendants

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com