IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WILLIAM IANNACONE,**
**individually,**
    **Plaintiff,**

v.                                          **CIVIL ACTION NO.: 2:24-cv-00245**
                                         **HONORABLE THOMAS E. JOHNSTON**

**J.D. ELLISON, individually, and**
**THE NICHOLAS COUNTY**
**COMMISSION, a political**
**Subdivision of the State of West**
**Virginia,**
    **Defendants.**

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**NOW COME** the Defendants, Deputy J.D. Ellison and the Nicholas County Commission, by counsel, Wendy E. Greve, Drannon L. Adkins and the law firm of Pullin Fowler, Flanagan, Brown & Poe, PLLC, and in support of their previously filed *Motion to Dismiss*, state as follows:

**I.**     **ARGUMENT**

**A.**     **Plaintiff's Claims Against Deputy Ellison Fail as a Matter of Law Because He is Entitled to Qualified Immunity**

The qualified immunity analysis involves two inquiries: (1) whether the Plaintiff has established the violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201-202 (2001); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). These prongs need not be analyzed in seriatim but may be addressed in "the order that will best facilitate the fair and efficient disposition of each case." Pearson v. Callahan, 555 U.S. 223, 242 (2009).

In their Motion to Dismiss, Deputy Ellison demonstrated that he was entitled to qualified immunity on Plaintiff's First Amendment claims for retaliatory traffic stop and detention and the

Fourth Amendment unreasonable seizure claim during the waning moments of the traffic stop, as the facts alleged do not establish a violation of either Amendment and even if the Court were to find to the contrary, such conduct was not a violation of a clearly established right. ECF No. 6, at p. 4-11.

1. First Amendment Claims

To prove a First Amendment retaliation claim, a plaintiff must show (1) "that [plaintiff's] speech was protected"; (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "a casual relationship exists between [plaintiff's] speech and the defendant's retaliatory action." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (*quoting* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)); Buxton v. Kurtinitis, 862 F.3d 423, 427 (4th Cir. 2017) (quotation marks omitted). However, a claim for retaliatory arrest (or detention) cannot succeed where there is probable cause for an arrest (or reasonable suspicion for a stop), regardless of whether a plaintiff's speech that is alleged to have motivated an arrest was protected by the First Amendment. Nieves v. Bartlett, 587 U.S. 391, 400-402 (2019). To succeed on such claim, the plaintiff has the burden to plead and prove the absence of probable cause or reasonable suspicion. Id. If the plaintiff establishes there was no probable cause/reasonable suspicion, and that his speech was protected, he must then show that his speech was a substantial or motivating factor behind the arrest or stop. Id.

   a. *Traffic Stop*

Plaintiff does not allege in his Complaint or argue in his response that Deputy Ellison lacked the requisite level of suspicion to effectuate the traffic stop. ECF No. 1; ECF No. 9, at p. 4-7. Instead, Plaintiff presupposes that flashing his headlights is protected speech and cannot ever be a basis for a traffic stop. Id. Plaintiff cites no authority that establishes a First Amendment right

2

to flash one's headlights. Id.

However, as the court in Obriecht v. Splinter, 2019 WL 1779226 (W.D.Wis. 2019) noted, "the law is far from settled about whether drivers have a First Amendment right to flash their headlights to convey a warning to oncoming vehicles" because "[n]either the Supreme Court nor any federal court of appeals has addressed the issue." Id. at *6. Thus, it is not clear that a citizen has a First amendment right to flash his or her headlights at other motorists.

Even if the First Amendment does provide citizens with the right to flash their headlights, Plaintiff does not plead facts establishing that Deputy Ellison lacked reasonable suspicion to effectuate a traffic stop. ECF No. 1, at ¶¶ 5-9. West Virginia Code § 17C-15-26(c) prohibits flashing lights except for turn signals or to warn that the vehicle is disabled or having an emergency. Because Plaintiff was flashing his lights when his vehicle was not disabled or having an emergency, such conduct arguably violated West Virginia Code § 17C-15-26, which supplied sufficient reasonable suspicion to effectuate a traffic stop.

Moreover, even if the Court determines that West Virginia Code § 17C-15-26 does not or should not apply to the flashing of headlights, it is not clearly established that effectuating a traffic stop for such actions is unlawful or that it violates the driver's First Amendment rights as "[n]either the Supreme Court nor any federal court of appeals has addressed the issue." Obriecht, 2019 WL 1779226. at *6.

Plaintiff does not cite to any contrary law clearly establishing his First Amendment right to be free from an alleged retaliatory traffic stop. ECF No. 9, at p. 4-7. Rather, Plaintiff cites only to cases establishing a right to be free from governmental retaliation generally. Id. at p. 5. But those cases would not be sufficient to place any reasonable law enforcement officer on notice that pulling over a motorist for flashing his or her headlights runs afoul of the First Amendment as such

3

cases concern retaliation in the employment context or invalidating a prison rule against jailhouse lawyers.

Thus, Deputy Ellison is entitled to qualified immunity on Plaintiff's First Amendment claim premised upon the decision to initiate a traffic stop.

      b. *Detention During Traffic Stop*

Plaintiff's First Amendment claim concerning his being briefly detained in handcuffs during the traffic stop likewise falters.

Plaintiff concedes that at the time of the interaction failing to sign one's vehicle registration card was "technically a crime." ECF No. 9, at p. 6. Nevertheless, he claims that even though he "technically [committed] a crime" temporarily detaining him during the traffic stop violates his First Amendment rights. Id. However, because Plaintiff's registration card was unsigned, there was probable cause to detain him and such action does not run afoul of the First Amendment. *See, e.g.,* Branzburg v. Hayes, 408 U.S. 665, 682 (1972) ("It is clear that the First Amendment does not invalidate every incidental burdening of [speech] that may result from the enforcement of civil or criminal statutes of general applicability."); *see also,* Nieves, 587 U.S. at 400-402.

At the time Plaintiff was ordered from the vehicle, the traffic stop had not concluded. As Deputy Ellison was informing Plaintiff of the citations and possible penalties, Plaintiff laughed, at which point Plaintiff was ordered from the vehicle. Such conduct was permissible. Michigan v. Long, 463 U.S. 1032, 1047 (1983) ("police may order persons out of an automobile during a stop for a traffic violation." (citations omitted)). Having an unsigned registration card likewise would have authorized an arrest. *See* Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Nieves, 587 U.S. at 400-402; Reichle v. Howards, 566 U.S. 658, 664-665 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by

4

probable cause….").

Nevertheless, since Plaintiff's Complaint does not adequately allege an absence of probable cause, and in fact, there was probable cause to detain Plaintiff due to his unsigned registration card, the First Amendment retaliation claim based on the conduct in the waning moments of the traffic stop fail to state violation of a clearly established First Amendment right.

Accordingly, Deputy Ellison is entitled to qualified immunity on Plaintiff's First Amendment claim based upon the brief detention during the traffic stop.

   2. Fourth Amendment

Deputy Ellison is entitled to qualified immunity on both Fourth Amendment theories because (1) he had probable cause to seize Plaintiff for a traffic violation, and (2) law enforcement officers can conduct a pat-down incident to arrest.

   a. *False Arrest Claim*

To state a claim for false arrest under § 1983, a plaintiff must demonstrate that he was arrested or seized without probable cause. Street v. Surdyka, 492 F.2d 368, 372-373 (4th Cir. 1974) ("[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause."); Brown v. Gilmore, 278 F.3d 362, 367–68 (4th Cir. 2002) (analyzing false arrest claim for whether seizure was unreasonable). Therefore, the question of whether Deputy Ellison violated Plaintiff's constitutional rights depends on whether he had probable cause to seize him. Brown, 278 F.3d at 368.

Plaintiff claims there was no legal basis for seizing him during the traffic stop. ECF No. 9, at p. 8. However, Plaintiff has already conceded that operating his vehicle without a signed registration card was "technically a crime" at the time of the stop. Id. at p. 6. Thus, there was probable cause to seize him during the traffic stop.

A routine traffic stop becomes an unreasonable seizure," and therefore unconstitutional under the Fourth Amendment, "when law enforcement impermissibly exceeds the stop's scope or duration." United States v. Hill, 849 F.3d 195, 200 (4th Cir. 2017). A traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [the] mission [of the traffic stop]." Illinois v. Caballes, 543 U.S. 405, 407 (2005).

As noted above, during the traffic stop it was determined that the vehicle's registration card was unsigned, which was at the time, a criminal violation. Because Plaintiff's registration card was unsigned, it constituted a misdemeanor and Deputy Ellison had probable cause to further detain and seize him. Moreover, at the time of the additional detention, the mission of the stop had yet to be completed because Plaintiff and Deputy Ellison began debating the penalty for the unsigned registration card.[1]

Finally, even if Deputy Ellison had continued through with the arrest procedure, such conduct does not run afoul of the Fourth Amendment, even for minor or non-jailable offenses. Atwater, 532 U.S. at 354.; *see also*, Meeks v. McClung, 2023 WL 8791686, at *10 (S.D.W.Va. 2023) ("an arrest for a minor, non-jailable traffic offense punishable only by fine is not unreasonable under the Fourth Amendment, so long as the arrest is supported by probable cause." (*citing* Atwater, 532 U.S. at 354)). Because Plaintiff has not properly alleged that his temporary detention during the traffic stop lacked probable cause (nor can he as Plaintiff has not alleged that his registration card was signed), there was no Fourth Amendment violation.

Accordingly, because probable cause existed, Deputy Ellison is entitled to qualified immunity on the false arrest claim as there is no constitutional violation and even if there was, Plaintiff's seizure was reasonable as there was probable cause to support the arrest.

---

1 Plaintiff acknowledges that the "mission" was not yet completed by conceding that Deputy Ellison had yet to hand Plaintiff the citations. ECF No. 9, at p. 6 n.1.

> b. *Unlawful Search Claim*

Deputy Ellison could conduct a brief, limited search of his person incident to Plaintiff's arrest without running afoul of the Fourth Amendment.

Searches incident to arrest are permitted because "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons" that the person "might seek to use in order to resist arrest or effect his escape" and to prevent "concealment or destruction" of evidence. Riley v. California, 573 U.S. 373, 383 (2014) (quoting Chimel v. California, 395 U.S. 752, 762-63 (1969)).

Plaintiff implies that Deputy Ellison needed more information about whether Plaintiff was armed and dangerous before conducting a search. ECF No. 9, at p. 10-11. That would be so, if Plaintiff was not being arrested. *See e.g.*, Knowles v. Iowa, 525 U.S. 113, 117-118 (1998).

However, Deputy Ellison decided to forego issuing the citations and arrest Plaintiff for the registration card violation. Thus, the search was a search-incident-to arrest. Under the exception, a lawful custodial arrest permits a police officer to search "the arrestee's person and the area 'within his immediate control.'" Arizona v. Gant, 556 U.S. 332, 339 (2009) (*citing* Chimel, 395 U.S. at 763); United States v. Robinson, 414 U.S. 218, 235 (1973) (when police effect a lawful arrest, they may conduct a full search of the arrestee's person without any additional justification). An arrest pursuant even to a simple traffic violation permits a search incident to arrest. Robinson, 414 U.S. at 224 (search incident to arrest permissible where defendant was lawfully arrested for driving after revocation of his license); *see also* Gustafson v. Florida, 414 U.S. 260, 266 (1973) (search permissible where defendant arrested for driving without a license, after officer stopped vehicle for erratic driving and defendant could not produce license).

"The constitutionality of a search incident to an arrest does not depend on whether there is

7

any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." Michigan v. DeFillippo, 443 U.S. 31, 35 (1979). This is a "bright line" rule of constitutional law. United States v. Porter, 738 F.2d 622, 627 (4th Cir.1984). Once Plaintiff was placed in handcuffs, it was constitutionally permissible to conduct a limited search of his person. Chimel, 395 U.S. at 763. It matters not whether Deputy Ellison believed or had reason to suspect that Plaintiff was armed. DeFillippo, 443 U.S. at 35. That Deputy Ellison later decided to reverse course by exercising his discretion to not arrest Plaintiff does not render the search improper.

Accordingly, because probable cause existed to arrest Plaintiff, Deputy Ellison was permitted under the Fourth Amendment to conduct a limited search incident to arrest. Thus, Deputy Ellison is entitled to qualified immunity on the unlawful claim as there is no constitutional violation.

**B.      Plaintiff's Municipal Liability Claim Fails as a Matter of Law**

Plaintiff fails to allege that his federal constitutional rights were violated pursuant to an unconstitutional policy or custom fairly attributable to the Nicholas County Commission. See ECF No. 1.

   1.  Plaintiff Fails to Properly Allege a Basis for a Municipal Liability Claim

A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (*quoting*, Carter v. Morris, 164 F.3d 215, 217 (4th Cir.1999)). That is because "a municipality cannot be held liable solely because it employs a

8

tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Thus, a municipality may be held liable for its own actions or for the acts of those persons who have final policymaking authority. Id. at 694; *see also* Riddick v. Sch. Bd., 238 F.3d 518, 523 (4th Cir. 2000) (*quoting* Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

Plaintiff's response indicates that he is attempting to proceed under both a custom by condonation and failure-to-train theory. ECF No. 9, at p. 14-15. Plaintiff alleges no facts to support either theory.[2] ECF No. 1, at ¶¶ 33-37.

"Prevailing under … a [condonation] theory is no easy task." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014). Such a theory requires allegations of a "persistent and widespread practice[ ] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." Id. (citing Spell v. McDaniel, 824 F.2d 1380, 1386-91 (4th Cir.1987)). However,"[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. Id. at 403 (citation omitted).

Yet, Plaintiff's complaint does not even allege "[s]poradic or isolated violations" much less a "persistent and widespread practice." ECF No. 1, at ¶¶ 33-37. Aside from his own incident, Plaintiff identifies zero additional instances of motorists being stopped for flashing their lights or otherwise being subjected to alleged First or Fourth Amendment violations. Id. "[T]hat lone incident, standing on its own, cannot create a widespread custom." Wickline v. Cumberledge, 2024

---

2 Plaintiff claims that NCC's arguments are "premature" because discovery is needed. ECF No. 9, at p. 15. As noted by this Court, a plaintiff cannot "reasonably believe she is entitled to discovery to develop her deficient claim. It is well-settled that improperly pled claims 'do[ ] not unlock the doors of discovery.'" Crawford v. Daniels, 2024 WL 1895105, at *9 (S.D.W.Va. 2024) (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009)); Wickline v. Cumberledge, 2024 WL 3416282, at *5 (S.D.W.Va. 2024) (Plaintiffs failed to allege sufficient facts in their complaint to state a Monell claim, they have no right to discovery on that claim." (citation omitted).

9

WL 3416282, at *5 (S.D.W.Va. 2024) (citation omitted). Thus, Plaintiff has not properly alleged a custom by condonation theory of municipal liability.

Nor has Plaintiff alleged a failure-to-train theory. Like a custom by condonation theory, a failure-to-train theory "can only form a basis for liability if 'it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations.'" Deavers v. Martin, 629 F. Supp. 3d 389, 407 (S.D.W.Va. 2022) (citation omitted). Thus, to allege a failure-to-train theory, a plaintiff needs to "(1) point out a specific deficiency in [the officers'] training, as opposed to general laxness or ineffectiveness in [their] training[;] and (2) allege that [the municipality] knew about the specific deficiency and failed to correct it." Wickline, 2024 WL 3416282, at *4 (internal citations and quotation marks omitted).

Because Plaintiff has failed to plausibly enumerate the existence of an unconstitutional policy or custom resulting in his alleged constitutional deprivations, and because the NCC cannot be held vicariously liable for the acts of its employees, Plaintiff has failed to state a claim against the NCC.

2. Plaintiff's Municipal Liability Claim Fails Because He did not Suffer a Constitutional Violation

In the motion to dismiss, the NCC also argued that Plaintiff's municipal liability claim failed due to the lack of a predicate constitutional violation. ECF No. 6, at p.14-15. Plaintiff did not respond to the NCC's additional argument. ECF No. 9.

As Plaintiff failed to respond to this argument, the Court should deem that argument as conceded. Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (authorizing the district court, after allowing plaintiff an opportunity to respond, to "rule on the [defendant's] motion and dismiss [the] suit on the uncontroverted bases asserted therein."); Blankenship v. Necco, LLC, 2018 WL 3581092, at *9 (S.D.W.Va. 2018) ("The failure to respond to arguments raised in a

10

motion for summary judgment can indicate that the non-moving party concedes the point or abandons the claim."); Walker v. Mary Washington Healthcare, 2017 WL 3262252, at *5 (E.D.Va. 2017); Muhammad v. Maryland, 2012 WL 987309, at *1 n.3 (D.Md. 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim"); Wainright v. Carolina Motor Club, Inc., 2005 WL 1168463, at *13 (M.D.N.C. 2005) ("Plaintiff's failure to argue this claim is tantamount to abandonment of the claim"). By "fail[ing] to address" the argument, Plaintiffs "consequently[] concede[] to Defendants' position." Taylor v. Clay Cty. Sheriff's Dep't, 2020 WL 890247, at *2 (S.D.W.Va. 2020); Fields v. King, 576 F.Supp.3d 392, 408 (S.D.W.Va. 2021).

As Plaintiff cannot establish that he suffered a constitutional deprivation under the First or Fourth Amendments, there can be no municipal liability. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Accordingly, Plaintiff's municipal liability claim fails as a matter of law and should be dismissed.

## IV.    CONCLUSION

**WHEREFORE,** Plaintiff's Complaint fails to state a claim for which relief may be granted against the Defendants. Thus, for the foregoing reasons, these Defendants respectfully request that this Honorable Court dismiss the claims against them, with prejudice.

**DEPUTY J.D. ELLISON and THE NICHOLAS COUNTY COMMISSION,**
By Counsel,

*/s/ Drannon L. Adkins*
Wendy E. Greve, WV State Bar No. 6599
Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:     (304) 344-0100
Facsimile:      (304) 342-1545

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WILLIAM IANNACONE,**
**individually,**

      **Plaintiff,**

v.                                          **CIVIL ACTION NO. 2:24-cv-00245**
                                              **HONORABLE THOMAS E. JOHNSTON**

**J.D. ELLISON, individually, and**
**THE NICHOLAS COUNTY**
**COMMISSION, a political**
**Subdivision of the State of West**
**Virginia,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify on the **2ND** day of **August 2024**, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court via the CM/ECF system which will send notification to the following:

John Bryan
P.O. Box 366
Union, WV 24983
jhbryan@me.com; jhb@johnbryanlaw.com
*Counsel for Plaintiff*

                                                       */s/ Drannon L. Adkins*
                                                    Wendy E. Greve, WV State Bar No. 6599
                                                    Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:     (304) 344-0100
Facsimile:     (304) 342-1545

13