# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

WILLIAM IANNACONE,

        Plaintiff,

v.                                            CIVIL ACTION NO.  2:24-cv-00245

J. D. ELLISON, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendants Nicholas County Commission ("the Commission") and J.D. Ellison's (collectively "Defendants") motion to dismiss plaintiff William Iannacone's ("Plaintiff") complaint for failing to state a claim upon which relief may be granted. (ECF No. 5.) Principally, this case centers around an apparent retaliation by Deputy Ellison after Plaintiff exercised his First Amendment rights by flashing his headlights to warn of police presence and laughing during a traffic stop. Defendants justify dismissal on two grounds. First, they claim Ellison—a sheriff's deputy—is entitled to qualified immunity for a host of reasons. (ECF No. 6 at 3–11.) Second, Defendants claim Plaintiff has failed to sufficiently plead facts to hold the Commission—a municipality—liable for Deputy Ellison's actions. (ECF No. 11–15.) For the reasons that follow, the Court **GRANTS** dismissal of the Commission, but **DENIES** the motion as it relates to Deputy Ellison.

I.     BACKGROUND

As explained in his complaint, Plaintiff was driving his car down a stretch of U.S. Route 19 on May 13, 2022.[1]  (ECF No. 1 at ¶ 4.)  While traveling through a portion of the route crossing Nicholas County, West Virginia, Plaintiff noticed a parked law enforcement officer running radar to catch speeding motorists.  (*Id.*)  Plaintiff decided to send a warning to oncoming motorists that they were about to cross paths with the officer.  (*Id.* at ¶ 5.)  To send that message, Plaintiff began flashing his headlights at the passing cars.  (*Id.*)  Plaintiff's message got through to the oncoming motorists. (*Id.* at ¶ 5.)  Unfortunately for Plaintiff, Deputy Ellison was among the recipients of that message.  (*Id.* at ¶ 6.)

Ellison, a deputy of the Nicholas County Sheriff's Department, turned his vehicle around and initiated a traffic stop.  (*Id.*)  Deputy Ellison explained to Plaintiff that "he had pulled him over for flashing his headlights to warn other drivers of the officer running radar."  (*Id.* at ¶ 7.) Plaintiff then explained to Deputy Ellison that "he was unaware that flashing his headlights as a warning to other drivers was illegal."  (*Id.* at ¶ 8.)  Plaintiff also stated that he believed he was "engaging in protected speech" by using his headlights in this way.  (*Id.*)

Evidently, Deputy Ellison was unmoved by Plaintiff's constitutional appeal.  He proceeded to write out two citations to Plaintiff: one for violating the "special restrictions on lamps" statute and another for "an unsigned registration card."  (*Id.* at ¶ 9.)  Before he gave the citations to Plaintiff, Deputy Ellison proceeded to extend the traffic stop.  (*Id.* at ¶ 10.)  Deputy Ellison began explaining to Plaintiff that the maximum penalties for an unsigned registration card included "six months in jail and that [Deputy Ellison] could arrest him instead of giving him a

---

[1] For what it is worth, the Court takes judicial notice that the section of road in question is a notorious speed trap.

2

citation." (*Id.*) Plaintiff, apparently finding this suggestion absurd, began laughing. (*Id.*) According to Plaintiff, his "laughing infuriated Defendant Ellison who immediately retaliated by ordering him to get out of the vehicle whereupon he placed him in handcuffs and led him back to the cruiser." (*Id.* at ¶ 11.) The pair engaged in an exchange, where Deputy Ellison took exception to being called "brother" by saying "I'm not your brother and I'll [n]ever be your brother." (*Id.*) Plaintiff was then "forced to stand handcuffed" for several minutes on Route 19 before "[Deputy] Ellison finally released him after speaking with an unnamed prosecuting attorney." (*Id.*)

Plaintiff filed this action on May 13, 2024 against both Deputy Ellison and the Commission. (*See generally id.*) The complaint alleges three causes of action under 42 U.S.C. § 1983. First, Plaintiff alleges he was deprived of his civil rights when Deputy Ellison retaliated against him for expressing protected speech. (*Id.* at ¶¶ 13–23.) Second, Plaintiff alleges an unconstitutional search and seizure of his person by Deputy Ellison. (*Id.* at ¶¶ 24–30.) Finally, Plaintiff alleges *Monell* liability against the Commission for maintaining a policy of unconstitutional practices and failing to train Deputy Ellison on the unconstitutional practices he engaged in. (*Id.* at ¶¶ 31–38.) Defendants simultaneously answered and moved to dismiss the complaint under Rule 12(b)(6). (ECF Nos. 5, 7.) All parties have fully briefed the motion and the matter is now ripe for adjudication.

## II.    LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts,

the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint must sufficiently plead facts that "state a claim to relief that is plausible on its face" to overcome a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Simple conclusions that a plaintiff is entitled to relief are insufficient to meet the pleading requirement. *Id.* at 555. Facial plausibility is met when the facts alleged support a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume all factual allegations on the face of the well-pleaded complaint in the light most favorable to the nonmovant to determine if they "plausibly give rise to an entitlement to relief." *Id.* at 678–69. Consequently, "a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017).

### III.  DISCUSSION

Defendants seek dismissal of all three counts alleged by Plaintiff. The Court will initially address the Fourth Amendment claim (Count II) followed by the First Amendment claim (Count I) and finally the *Monell* claim (Count III).

#### A. Count II: Fourth Amendment Claims

##### 1. The Initial Traffic Stop

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure within the meaning of the Fourth Amendment and, therefore, must be reasonable under the

circumstances. *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* Provided that an officer has reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993). The officer's subjective motive for initiating a stop is irrelevant provided he had reasonable suspicion to conduct the stop in the first place. *Whren*, 517 U.S. at 806. If, however, an officer lacks reasonable suspicion, then the stop and any resulting search violates the Fourth Amendment. *See id.* at 811–12.

Defendants argue that Deputy Ellison had reasonable suspicion that Plaintiff violated the restriction on special lamps. (ECF No. 6 at 6.) The Court has serious doubts that a reasonable officer could interpret the statute the way Defendants propose.[2] That inquiry, however, is unnecessary at this juncture. Plaintiff contends that Deputy Ellison stated he initiated the stop because Plaintiff was signaling other drivers of the presence of another officer. (*See* ECF No. 1 at 26.) There does not appear to be a law in West Virginia that criminalizes such behavior.

---

[2] Defendants claim that the statute "provides that flashing lights may not be *utilized* by [motorists] except for turn signals or to warn that the vehicle is disabled or having an emergency." (ECF No. 6 at 6 (citing W. Va. Code § 17C-15-26(c)) (emphasis added).) The statute, however, states that "flashing lights are prohibited *on* motor vehicles," except as otherwise authorized. W. Va. Code § 17C-15-26(c) (emphasis added). Thus, it is not the "use" of the standard, manufacturer issued headlamps that runs afoul of the statute. Rather, it is affixing a prohibited, aftermarket light "on" the vehicle that is unlawful. Case law supports this reading. According to the Supreme Court of Appeals of West Virginia, reasonable suspicion to justify a stop under the statute can occur when an individual has headlamps displaying a prohibited color and affixed in prohibited locations on the vehicle. *See State v. Farley*, 2015 WL 6181512, at *2 (W. Va. Oct. 20, 2015) (upholding a conviction under § 17C-15-26 where a defendant argued the display of multicolor lights was protected under the First Amendment). Defendants have done nothing to suggest that Plaintiff's headlamps were anything other than original equipment consistent with federal requirements. By federal regulation, every motor vehicle is required to have two, differing brightness headlamps for use on the road—which may be created to automatically switch from high- to low-beams by the manufacturer. *See* Federal Motor Vehicle Safety Standard No. 108. Defendants' reading of the statute would potentially run afoul of existing federal requirements.

Taking the facts—as the Court must—in the light most favorable to Plaintiff, Deputy Ellison allegedly initiated the stop without reasonable suspicion. Such a stop would violate the Fourth Amendment. Accordingly, Plaintiff has sufficiently pled that the initial seizure for flashing his headlamps was a violation of the Fourth Amendment.

    2. <u>The Seizure After Laughing</u>

The second alleged seizure is a closer call. Both parties agree that, at the time of the encounter, West Virginia law made it a misdemeanor for driving a vehicle without a signed registration card. (*See* ECF No. 6 at 9 (citing W. Va. Code § 17A-3-13 (1951)); ECF No. 9 at 6 (". . . [D]riving while not having signed one's registration card is technically a crime in West Virginia.").) Defendants argue that it would be permissible to arrest a person on this offense, even though it was a misdemeanor. (ECF No. 6 at 9.) Plaintiff alleges that Deputy Ellison extended the stop beyond what the Fourth Amendment permits when he failed to timely hand over the completed citations. (ECF No. 9 at 6 n.1, 10.) Defendants count that, in failing to hand over the citations, the "mission" of Deputy Ellison's stop had not yet concluded. (ECF No. 10 at 6 n.1.)

Fourth Amendment rights are not violated when an officer arrests a person for even a minor traffic offense when there is probable cause that the infraction occured. *Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001). However, an officer may not perform a stop "longer than is necessary to effectuate the purpose of the stop." *Florida v, Royer*, 460 U.S. 491, 500 (1983). For a traffic stop to be extended "beyond the time necessary to accomplish" the purpose of the stop, an officer must either have "reasonable suspicion [of another crime] or receive the driver's consent." *United States v. Williams*, 808 F.3d 238, 245–46 (4th Cir. 2015) (citation omitted).

6

The reasonableness of the officer's further detention is evaluated under the totality of the circumstances. *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017) (citing *Rodriguez v. United States*, 575 U.S. 348, 357 (2015)). An officer may engage in other inquiries during a traffic stop, such as checking identification, examining registration documents, or verifying the absence of outstanding warrants. *See Rodriguez*, 575 U.S. at 355. While an officer need not use "the least intrusive means conceivable" when executing the function of a traffic stop, the chosen actions must be "the least intrusive means reasonably available." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016). Unconstitutionally extending a stop by even a *de minimis* amount of time violates the Fourth Amendment. *Hill*, 852 F.3d at 381 (citing *Rodriguez*, 575 U.S. at 356).

It is true that Deputy Ellison could have arrested Plaintiff for the unsigned registration card and not run afoul of the Fourth Amendment. However, Plaintiff's argument is that such actions were unreasonable given the totality of the circumstances. Plaintiff pleads that, even assuming Deputy Ellison had probable cause to arrest him on the unsigned registration card, his acts unnecessarily prolonged the encounter. By failing to hand over the already written citations and prolonging the encounter, Deputy Ellison arguably made the stop longer than necessary to effectuate its purpose. Further, Plaintiff contends—and Defendants do not dispute—that no other reasonable suspicion was observed by Deputy Ellison to justify prolonging the stop. True, the "mission" was not complete until Deputy Ellison handed over the citations. Yet if every officer could constitutionally prolong a stop by refusing to hand over citations, then *Royer* would mean very little for the protection of Fourth Amendment rights. Deputy Ellison may come back with better facts post-discovery that demonstrate his actions were reasonable under the circumstances. For purposes of the motion to dismiss, however, Plaintiff has sufficiently pled enough facts to

overcome Defendants' motion.

Defendants also claim that Deputy Ellison was "constitutionally permi[tted] to order Plaintiff out of the vehicle during the traffic stop." (*See* ECF No. 6 at 9 (citing *Michigan v. Long*, 463 U.S. 1032, 1047 (1983).) While it is true that an officer may order a suspect out of the car during a valid *Terry* stop, such order is only valid if an officer "possess[es] an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Long*, 463 U.S. at 1051. Defendants cite nothing to suggest that, between initiating the traffic stop and Plaintiff's laughter, Ellison noticed anything that would suggest that the encounter became dangerous to him. Without such justification, the act of ordering Plaintiff out of the car is arguably unjustified. For these reasons, a motion to dismiss at this stage would be improper.

3. The Search Incident to the Second Seizure

For the last of the Fourth Amendment claims, Plaintiff plausibly pleads he was unlawfully searched incident to being ordered out of the vehicle. (*See* ECF No. 1 at ¶ 26.) Defendants argue Deputy Ellison was permitted to search Plaintiff in the interest of officer safety. (*See* ECF No. 6 at 7.) "The sole justification" of a protective search of a suspect "is the protection of the police officer and bystanders." *Terry v. Ohio*, 392 U.S. 1, 29 (1968). Thus, when an officer "makes a lawful traffic stop and . . . has a reasonable suspicion that one of the automobile's occupants is armed," he may frisk the stopped motorists. *United States v. Robinson*, 846 F.3d 694, 696 (4th Cir. 2017) (citation omitted). Again, there is nothing to suggest at this time that Deputy Ellison became aware of an evolving threat to his safety. Thus, even assuming this was a frisk of Plaintiff, it was arguably unjustified based on the facts alleged.

Defendants further contend that Deputy Ellison's conduct can be justified as a search of Plaintiff's person incident to arrest. (*See* ECF No. 6 at 11 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)).) It is true that an officer may search an arrestee incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 762–63 (1969). Of course, Plaintiff plausibly asserts that the arrest itself was unconstitutional. A search incident to an otherwise unconstitutional seizure is, itself, unconstitutional. *Cf. Kyllo v. United States*, 533 U.S. 27, 32 (2001). Thus, Plaintiff plausibly states claims for unconstitutional searches and seizures. Accordingly, the Court **DENIES** Defendants' motion to dismiss Count II of the complaint.

   B. *Count I: First Amendment Retaliation Claims*

Plaintiff further identifies two possible instances of unconstitutional retaliation by Deputy Ellison. The first claim arises out of Ellison's decision to initiate a traffic stop because Plaintiff flashed his headlights. (*See* ECF No. 1 at ¶ 15.) The second claim stems from Deputy Ellison's decision to order Plaintiff out of the car because he laughed at him. (*Id.*) Plaintiff alleges that neither decision was supported by probable cause or reasonable suspicion. (*Id.* at ¶ 27.)

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To make out a First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in activity protected by the First Amendment, (2) that a defendant took action to adversely affect his First Amendment rights, and (3) that a causal relationship between the protected activity and a defendant's conduct can be established. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). The Court will analyze each claim under each prong in turn.

1. The Initial Stop

   i. Prong 1: Activity Protected by the First Amendment

The first prong requires Plaintiff to allege he engaged in activity protected by the First Amendment. The First Amendment does not exclusively protect the spoken or written word. Conduct that is "sufficiently imbued with elements of communication . . . fall[s] within the scope of the First and Fourteenth Amendments." *Spence v. Washington*, 418 U.S. 405, 409 (1974). Expressive conduct is protected First Amendment activity when there is "[a]n intent to convey a particularized message . . . and in the surrounding circumstances the likelihood [is] great that the message would be understood by those who viewed it." *Id.* at 410–11. Thus, the Supreme Court has found a myriad of activities as expressive conduct protected by the First Amendment. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) (collecting cases).

There is little doubt that the *Spence* test can be satisfied here at the motion to dismiss stage. According to the complaint, Plaintiff flashed his headlights "to alert motorists of" the officer running radar. (ECF No. 1 at ¶¶ 4–5.) Upon seeing this display, Deputy Ellison "pulled [Plaintiff] over for flashing his headlights to warn other drivers of the officer running radar." (*Id.* at ¶¶ 6–7.) Thus, Plaintiff intended to convey the very message that Deputy Ellison received and pulled him over for.

Defendants counter that the "law is far from settled about whether drivers have a First Amendment right to flash their headlights to convey a warning to oncoming vehicles." (ECF No. 6 at 5 (citing *Obriecht v. Splinter*, 2019 WL 1779226, at *6 (W.D. Wis. Apr. 23, 2019)).) Insofar as that argument goes to Plaintiff's First Amendment rights, that is a nonstarter. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police

10

officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). That has included, as the Second Circuit recently found, non-criminal warnings that police were present nearby. *See Friend v. Gasparino*, 61 F.4th 77, 91 (2d Cir. 2023).

In *Obreicht*, the Court concluded the law was "far from settled" by citing a law professor's article claiming that "crime facilitation" speech is categorically unprotected speech. *Obreicht*, 2019 WL 1779226 at *5 (citing Eugene Volokh, *Crime-Facilitating Speech*, 57 Stan. L. Rev. 1095, 1128 (2005)). It is true that some speech, such as incitement or fighting words, have been held to be categorically outside of the First Amendment. *See, e.g.*, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942). However, the Supreme Court has not recognized flashing headlights in this context as categorically outside of the First Amendment. At any rate, Defendants have not explained at all why Plaintiff's actions were categorically unprotected, only that the Magistrate Judge in the Western District of Wisconsin found that the "law [was] far from settled." (ECF No. 6 at 5 (citing *Obreicht*, 2019 WL 1779226 at *6).) Given that Plaintiff contends that Deputy Ellison knew and understood the message he was attempting to send, the Court finds no reason to conclude that flashing one's headlights do not constitute protected speech.

    ii. Prong 2: Defendant Took Adverse Action to Affect Plaintiff's First Amendment Rights

The next prong requires Plaintiff to plead that Deputy Ellison took adverse action to affect the exercise of his First Amendment rights. A retaliation claim is sufficiently made out if a defendant's "actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). "Not all retaliatory conduct tends to chill First Amendment activity, however, . . . and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a '*de minimis*

11

inconvenience' to [their] exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (citations omitted). A plaintiff in a § 1983 action need not show that they were actually deprived of their First Amendment rights, but rather they must show that "the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* (collecting cases).

Here, Plaintiff sufficiently pleads that a person of ordinary firmness would be deterred from exercising their potential First Amendment rights. Initiating a traffic stop because of protected speech and without probable cause would certainly deter a person from engaging in that protected speech. Thus, Plaintiff's allegations are enough to overcome a motion to dismiss.

   iii. Prong 3: A Causal Connection Between the Protected Speech and Defendant's Conduct

The third prong of a retaliation claim requires Plaintiff to eventually prove that Deputy Ellison knew of Plaintiff's speech and retaliated against him because of it. *See Constantine*, 411 F.3d at 501. The alleged actions of Deputy Ellison must be "a 'but-for' cause," such that "the adverse action against the plaintiff would not have been taken absent retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). To meet the causal connection prong of a First Amendment retaliation claim when an arrest is involved, the plaintiff must "plead and prove the absence of probable cause." *Id.* at 402. Without probable cause, a "retaliatory arrest" claim is made if the plaintiff shows that "retaliation was a substantial or motivating factor behind the [arrest]" and the defendant cannot show "that the [arrest] would have been initiated without respect to retaliation." *Id.* at 404 (citation omitted). Although the existence of probable cause generally defeats a retaliatory arrest claim, the plaintiff can still meet their burden in a situation "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406.

12

A plaintiff "must produce evidence to prove that his arrest occurred in such circumstances." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam). However, a plaintiff need not demonstrate specific types of evidence, so long as the evidence is objective. *See id.*

Although Plaintiff was seized during the traffic stop, he was not necessarily "arrested" at that time. The Court has not found a case where the Fourth Circuit has addressed the proper standard for a "retaliatory detention" claim. However, the circuit courts that have addressed this issue have simply substituted the absence of "probable cause" standard with the absence of "reasonable suspicion" for retaliatory detention claims. *See, e.g.*, *Waters v. Madson*, 921 F.3d 725, 742 (8th Cir. 2019) ("Therefore, to show that exercising his constitutional rights was the 'but-for' cause of a temporary detention, a plaintiff must show that the defendant officers lacked reasonable suspicion or arguable reasonable suspicion.") (citing *Allen v. Cisneros*, 815 F.3d 239, 245–46 (5th Cir. 2016)).

Under this standard, Plaintiff plausibly pleads a lack of reasonable suspicion. As the Court has already found above, Deputy Ellison likely did not have reasonable suspicion to believe that Plaintiff violated the "special lamps" statute in the first place. Regardless, Plaintiff has plausibly pled the absence of reasonable suspicion. At this stage, the Court must take the facts alleged in Plaintiff's favor and, if they lead to an inference of causation, deny the motion to dismiss. *See Tobey v. Jones*, 706 F.3d 379, 390–91 (4th Cir. 2013) (finding that, although the causation requirement is "rigorous" for a Plaintiff to meet at summary judgment, the requirement can be inferred at the motion to dismiss stage). Plaintiff contends that Deputy Ellison stated he was pulling him over because of the content of his speech. Taking that allegation as true, along with the temporal proximity between the speech and the stop, the Court can infer causation is

13

sufficiently pled.

    2. <u>The Seizure for Laughing</u>

Next, the Court will consider Ellison's choice to detain Plaintiff because he laughed at him. The same standard for the First Amendment retaliation claim applies from above with one exception. The Court finds that the standard here is for a retaliatory *arrest* claim as opposed to a retaliatory detention. In order to justify the search of Plaintiff's person, Defendants concede that placing Plaintiff in handcuffs was a "limited search incident to arrest." (ECF No. 9 at 11.) Thus, for Plaintiff to satisfy a causal relationship between the protected activity and Ellison's conduct he must "plead and prove the absence of probable cause for the arrest." *See Nieves*, 587 U.S. at 402.

The first two prongs of a First amendment retaliation claim are easily satisfied. By laughing at the conclusion of the traffic stop, Plaintiff engaged in protected speech that was critical of Deputy Ellison. *See City of Houston*, 482 U.S. at 461. As to the second prong, "the threat of an arrest is 'likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Nazario v. Gutierrez*, 103 F.4th 213, 237 (4th Cir. 2024) (citing *Constantine*, 411 F.3d at 500). Actually arresting a person for their protected speech would certainly chill further exercise of that speech. Thus, Plaintiff sufficiently pleads facts to meet the second prong.

Defendants essentially counter that the actions of Deputy Ellison were supported by probable cause to make the arrest. (*See* ECF No. 6 at 6–8.) As the Court has already found, however, Plaintiff plausibly alleges that the act of ordering him out of the car and placing him in handcuffs was not consistent with the Fourth Amendment. Accordingly, Plaintiff plausible alleges the absence of probable cause to support Deputy Ellison's actions. Plaintiff's claim that it was the quick succession of laughter followed by arrest demonstrates causation. The Court can infer

14

such causation at this stage and finds that the motion to dismiss Count I of the complaint should be **DENIED**.

      3.  <u>Qualified Immunity</u>

As the ultimate attack on the complaint, Defendants contend that Deputy Ellison is entitled to qualified immunity for his actions before and after the traffic stop. (*See* ECF No. 6 at 6–8.) Officers are entitled to qualified immunity "unless [his] conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At the motion to dismiss stage, a court must "[f]irst . . . decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "[s]econd, . . . the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Id.* For the following reasons, the Court finds qualified immunity is inapplicable here.

It is well settled that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Despite this well settled principle, Defendants assert that Deputy Ellison is entitled to qualified immunity because it is "debatable and thus not clearly established" that "flashing one's headlights to warn other motorists" is protected speech. (ECF No. 6 at 5.) That assertion, however, misses the point. Every reasonable officer in the United States is aware that retaliation for First Amendment speech is a violation of a person's constitutional rights. Where, as here, the allegation is that a defendant knew of the speech and reacted to it accordingly, qualified immunity cannot serve as a proper shield. If, just as Plaintiff alleges, Deputy Ellison knew of Plaintiff's speech, had no probable cause to initiate the stop, and stopped Plaintiff anyway because of that speech, then the actions make out a classic First

15

Amendment retaliation claim.

The Defendants' reliance on *Obreicht* is unpersuasive. In that case, state troopers in Wisconsin were deploying a department wide policy which interpreted their state law to prohibit flashing headlights to warn of a speed trap. *Obreicht*, 2019 WL 1779226 at *6. The Magistrate Judge determined that, because the question of whether that type of speech was protected was not "beyond debate" at the time of the arrest, the officer-defendants were entitled to qualified immunity. *Id.* at *6 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Respectfully, the Court disagrees with that Magistrate Judge's assessment. The right at issue here is of one's First Amendment right to engage in protected speech without the fear of official retaliation, not to flash headlights. Just because speech is understood, but stated in a novel medium, does not mean the protection to state one's beliefs without fear of retaliation is not "clearly established." Because Plaintiff pleads the absence of reasonable suspicion, and that the actions were motivated my otherwise protected speech, he has plausibly alleged that Deputy Ellison violated clearly established rights. Therefore, qualified immunity is inapplicable with regards to the initial stop.

Similarly, qualified immunity is not applicable to the decision to order Plaintiff out of the car and handcuff him. Defendants argue that "there is no Supreme Court decision holding that an officer acts unlawfully if he decides to arrest an individual upon probable cause . . . but neglects to consider whether that such conduct might be protected by the First Amendment." (ECF No. 6 at 7.) Maybe so, but it is clearly established that an officer may not arrest either absent probable cause or with sufficiently provable retaliatory animus. *Cf. Nieves*, 587 U.S. at 402, 404. Plaintiff sufficiently pled as much in his complaint and, therefore, qualified immunity should be denied.

*C. Count III: The Commission's Liability for Deputy Ellison's Actions*

Plaintiff has sufficiently established a claim to overcome Defendants' motion to dismiss on Counts I and II. However, Plaintiff has failed to plead enough facts as to Count III of his complaint. Count III alleges that the Commission is liable for the actions of Deputy Ellison by claiming that the Commission failed to stop unconstitutional behavior through its "policies, training, and practices." (ECF No. 1 at ¶¶ 34–38.) Aside from conclusory statements about the Commission's shortcomings, Plaintiff does not allege specific facts to allow the Court to draw any inference regarding any policy, training, or practice.

A municipality is not liable under § 1983 for the actions of its employees "on a *respondent superior* theory." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A "threadbare recital of the elements of a cause of action, supported by mere conclusory statements" is insufficient to plead a proper *Monell* claim. *Cook v. Howard*, 484 F. App'x 805, 811 (4th Cir. 2012) (cleaned up).

Although Plaintiff plausibly alleges constitutional violations, he does not sufficiently connect those violations to the Commission. Failing to state any facts beyond the conclusory allegations in the complaint is not enough to meet the pleading requirements of Rule 12(b)(6). The Court agrees with Defendants' argument that the rights violated here were not alleged to be "pursuant to an unconstitutional policy or custom fairly attributable to the [Commission]." (ECF No. 6 at 11.) The complaint is devoid of any allegation of an official policy, failure to train, or custom of the Commission that led to the alleged deprivation in Plaintiff's complaint. *See Lytle*

17

*v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Nowhere in the complaint does Plaintiff state what this policy is, who had rulemaking authority that adopted the official policy or custom, or how the failure to train Deputy Ellison was a "deliberate or conscious" choice. *See Roberts v. City of Hagerstown*, 2024 WL 640029, at *9 (D. Md. Feb. 14, 2024) (stating the test to prove a failure to train claim).

Plaintiff contends that his bare allegations are sufficient, and that the "allegations asserted in the Complaint[] are more properly addressed at the summary judgment stage." (ECF No. 9 at 15.) However, the Fourth Circuit has cautioned against allowing such conclusory allegations to subject a municipality to a discovery process which would amount to little more than a fishing expedition. *Jordan by Jordan*, 15 F.3d at 340 (" . . . [D]istrict courts [should not] tolerate what will be for plaintiffs the temptation to seek unlimited discovery from municipal defendants in the mere hope of obtaining tidbits of information from which they can cobble together support for what were conclusory allegations of an impermissible municipal policy."). Plaintiff's conclusory allegations fail to meet the pleading standards of Rule 12(b)(6). Accordingly, the Court must **GRANT** Defendants' motion to dismiss Count III of the complaint.

## IV. CONCLUSION

Plaintiff has plead enough facts to survive a motion to dismiss on his First and Fourth Amendment claims. However, Plaintiff has not pled sufficient, non-conclusory facts to plausibly allege a policy or custom to impart liability to the Commission. Accordingly, the Court **GRANTS** the motion to dismiss (ECF No. 5) as to Count III of the complaint and the Commission, but **DENIES** the motion with respect to Count I, Count II, and Deputy Ellison. (ECF No. 5.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 25, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE